TILBURY et al. v. OREGON STEVEDORING CO. Inc., et al.

(District Court, D. Oregon. January 5, 1925.)

No. E–8703.

1. Monopolies ⊕⇒12(1)—Only monopolies which directly obstruct interstate commerce are condemned by anti-trust legislation.

Only monopolies which intentionally or of necessity directly restrain or obstruct interstate traffic or commerce are condemned by Anti-Trust Act July 2, 1890 (Comp. St. § 8820 et seq.), and amendments thereof, and Clayton Act.

2. Monopolies ⊕⇒24(2), 28, 31—Violation of anti-trust statute must be shown, regardless of kind of relief sought against alleged monopoly.

Whether relief sought against alleged monopoly be injunctive or for damages or through indictment, it is essential to show a violation of anti-trust statutes.

3. Monopolies ⊕⇒24(2), 28—Bill in longshoremen's suit against alleged unlawful combination of stevedores held fatally defective.

Bill for injunction and damages, charging that defendants engaged in stevedoring ocean-going vessels engaged in interstate commerce in violation of Anti-Trust Act July 2, 1890 (Comp. St. § 8820 et seq.), and amendments thereof, and Clayton Act, had formed an employers' association, established a hiring hall, adopted registration and probationary systems, kept list of objectionable longshoremen, and fixed a uniform wage, held insufficient for failure to show, except by mere assumption and conclusion, that association was intended to or did impede interstate commerce.

In Equity. Suit by Charles E. Tilbury and another against the Oregon Stevedoring Company, Incorporated, and others. Bill dismissed.

Lord & Moulton, of Portland, Or., for complainants.

Carey & Kerr, of Portland, Or., for respondents Oregon Stevedoring Co., Inc., Brown & McCabe, Clayton R. Jones, Oregon-Ocean Corporation, McCormick S. S. Co., and Pacific S. S. Co.

Wilson & Reilly, of Portland, Or., for respondent Luckenbach S. S. Co., Inc.

A. C. Spencer and Roy F. Shields, both of Portland, Or., for respondent San Francisco & Portland S. S. Co.

WOLVERTON, District Judge. This is a suit on the part of complainants to restrain respondents from violating the Act of Congress of July 2, 1890, commonly known as the Anti-Trust Act (Comp. St. § 8820 et seq.), and acts amendatory thereof, and for triple damages, as accorded by the act of October 15, 1914, commonly known as the Clayton Act (38 Stat. 730).

The respondents, some of them, are engaged in the stevedoring business in the Port of Portland, and some in owning and operating ships in intercoastal and interstate trade between the Port of Portland and other ports. Complainants are longshoremen, competent and skilled in the business, and of good habits and reputation.

It is charged that, prior to October 12, 1922, the respondents and certain other persons, firms, and corporations engaged in stevedoring ocean-going vessels engaged in interstate commerce, did enter into an unlawful combination and conspiracy, whereby they formed an association to be known as Water Front Employers' Association, and became members thereof, and, through its instrumentality, established a hiring hall for employing longshoremen for doing stevedoring in loading and discharging vessels; the purpose being to establish rules and regulations, governing the employment of longshoremen and their conduct, and a registration system whereby all longshoremen desiring employment would be required to make application to the manager of the hiring hall, who would then refer the application to a person having a list of persons objectionable to respondents, "which complainants upon information and belief allege is because of affiliations with labor organizations," and if such applicant was not objectionable, his application would be received by the manager of the association, and he would be permitted to work on probation for a period of time, at the end of which period, if found satisfactory, respondents would register him, and issue to him a registration card, which would permit him to work regularly for respondents; but, if applicant was rejected, he could not secure employment with respondents; that, among other things, it was agreed that respondents would fix a uniform wage to be paid longshoremen working in the Port of Portland, and that no member of the association would pay a different wage; that it was further agreed that respondents would not employ longshoremen whom any of the respondents did not desire to employ, and that, if one of respondents should discharge a longshoreman for cause satisfactory to it, and should so request, he should not be employed or permitted to work for other members of the association, and, as a result, the discharged longshoreman would be unable to obtain employment in the city of Portland, or engage in forwarding or receiving interstate commerce between Oregon and other states and foreign nations as a means of livelihood; that by reason thereof practically all the business of loading and stowing cargoes, and discharging the same, on and from ships in the Port of Portland engaged in interstate commerce, is done exclusively by respondents, except that carried on by one company known as the Portland Stevedoring Company, which does but a small proportion of the business of stevedoring as compared with respondents; that complainant Tilbury's application was denied, and he was not permitted to work for respondents, although there was ample work to be done in his line, for the alleged reason that his name was not on the approved list of the association; and that, by virtue of the agreement, the respondents, between and among themselves, have created and do now maintain a monopoly of the labor conditions in the Port of Portland, in restraint of trade in interstate commerce.

As to Marks, it is charged that he was discharged and has not since been able to find employment with the association. The suit purports to have been instituted on behalf of complainants and all other persons and longshoremen similarly situated, to the end that multiplicity of actions may be obviated. There is no asseveration that, by reason of the alleged monopoly or interference with the movement of interstate commerce, or of the facts stated, complainants have been or will be irreparably injured or their rights irremediably infringed. The prayer is for injunction and triple damages.

The sufficiency of the bill is tested by motions to dismiss.

[1,2] Not all monopolies are denounced by the anti-trust legislation of Congress. It is only such as are in restraint of interstate traffic or commerce, and it is this sort of combination that Congress has attempted to relieve against. Whether the relief sought by litigation be injunctive in character, or by action for triple damages, or through indictment, it is essential to charge and show a violation of the statute; otherwise the litigation must fail. Trenton Potteries Co. v. United States (C. C. A.) 300 F. 550, 553.

Nor are all agreements under which, as a result, the costs of conducting interstate commercial business may be increased, condemned by the anti-trust legislation. It is only where there is some direct and immediate effect upon interstate commerce that monopolies are denounced. Hopkins v. United States, 171 U. S. 578, 592, 19 S. Ct. 40, 43 L. Ed. 290. In another case of like character, decided on the same day (Anderson v. United States, 171 U. S. 604, 615, 19 S. Ct. 50, 54, 43 L. Ed. 300), it is declared that: "Where the subject-matter of the agreement does not directly relate to and act upon and embrace interstate commerce, and where the undisputed facts clearly show that the purpose of the agreement was not to regulate, obstruct or restrain that commerce, but that it was entered into with the object of properly and fairly regulating the transaction of the business in which the parties to the agreement were engaged, such agreement will be upheld as not within the statute, where it can be seen that the character and terms of the agreement are well calculated to attain the purpose for which it was formed, and where the effect of its formation and enforcement upon interstate trade or commerce is in any event but indirect and incidental, and not its purpose or object."

And it is only where the intent to injure, obstruct, or restrain interstate commerce is made to appear as an obvious consequence of what is being done, or that such is the necessary effect of the alleged unlawful combination or agreement, that relief may be had in pursuance of the anti-trust legislation of Congress. United Mine Workers v. Coronado Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762; United Leather Workers' International Union, etc., v. Herkert & Meisel Trunk Co. et al., 265 U. S. 457, 44 S. Ct. 623, 68 L. Ed. 1104, 33 A. L. R. 566. See, also, Street v. Ship Owners' Ass'n of the Pacific Coast (C. C. A.) 299 F. 5.

[3] Now, to revert to the bill: By a review of the alleged manner and purposes of the organization of the Waterfront Employers' Association, nothing appears to indicate that it was the intent and purpose of the promoters to stifle, hamper, or impede traffic, in any way, in interstate commerce. It would seem, on the other hand, that the organization is calculated rather to promote such traffic. It is only where the interest of complainants as individuals touches the association that complaint is made of its maintenance and operation.

It must be conceded that respondents, whether in combination as an association or singly, have the right to hire whom they please and discharge such employees as might be in their service at will, unless bound by contractual relations to retain them for a longer period. So also have they the right to make reasonable rules and regulations respecting employment of labor, and for ascertaining the qualification and character of applicants seeking employment; nor is it for the court to intervene in their exercise of such right. The labor sought by respondents is for expediting the handling of freight, both incoming and outgoing, in aid of traffic in interstate commerce, and not to stifle such traffic; and that the rules and regulations for promoting the employment of labor may work against the acceptance of members of a labor union does not tend to render the association a monopoly, or its maintenance unlawful. Nor does the maintenance of a hiring hall, nor the adoption of a registration system, the keeping of a list of objectionable persons engaged in longshoring, or the adoption of a probationary system, have such a tendency. The fixing of a uniform wage does not affect interstate commerce, and no complaint is made that the wage adopted is either too high or too low; complainants' concern being that they shall be employed regardless of the rules and regulations of the association. Nor does it affect traffic in interstate commerce adversely that practically all the business of loading and discharging vessels in the Port of Portland, engaged in interstate commerce, is done through the association and its members; and what statement of facts do we find in the bill that shows that it does? There is no combination of circumstances, or plan of action or procedure, as appears from the bill, that I can see, that has that effect. The intent to impede interstate commerce must appear from what is pleaded and the facts set up divulge no such intent, except that possibly it may appear by mere assumption or conclusion.

The motions to dismiss will be sustained.